UNITED STATES DISTRICT COURT  FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK

---

INGRID SHEAFE-CARTER,

                      Plaintiff,

    -versus-

                                       MEMORANDUM & ORDER
PATRICK R. DONOHUE, POSTMASTER       11-CV-4128
GENERAL,[1]

                      Defendants.

---

APPEARANCES

        By:    INGRID SHEAFE-CARTER
                    69-18 Beach Channel Drive
                    Arverne, NY 11692
                    *Pro Se*

        By:    LORETTA LYNCH
                    United States Attorney
                    271 Cadman Plaza East
                    Brooklyn, NY 11201
                    Seth D. Eichenholtz
                    *Attorney for Defendants*

JOHN GLEESON, United States District Judge:

        On August 24, 2011, *pro se* plaintiff Ingrid Sheafe-Carter commenced this action against her employer, the Postmaster General of the United States Postal Service ("USPS") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e- 2000e-17, and the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112-12117.[2] The complaint alleges

---

[1] On July 8, 2013, I granted Sheafe-Carter's motion to amend her complaint to add the Postmaster General as a defendant in lieu of the United States Postal Service. The Clerk of Court is respectfully directed to amend the caption to conform to the caption on this Memorandum and Order.

[2] The USPS is not subject to suit under the Americans with Disabilities Act. *See* 42 U.S.C. § 12111(5)(B). Thus, I construe the complaint as raising claims under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-797, which is the exclusive means by which a plaintiff may raise claims against federal agencies relating to disability discrimination.

that (1) the USPS placed Sheafe-Carter in a "standby room" from May 2009 until May 2010 because of a failure to accommodate her disability; (2) the USPS forced Sheafe-Carter to take leave in May 2010 (a) because of a failure to accommodate her disability and (b) in retaliation for her August 2009 Equal Employment Opportunity ("EEO") complaint; and (3) the USPS intentionally discriminated against her on account of her national origin (Trinidad and Tobago). The Equal Opportunity Commission issued a right to sue letter on May 31, 2011. Sheafe-Carter seeks $1,000,000 in damages. Pending before this Court is defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). For the reasons explained below, the motion is granted.

## BACKGROUND

The following facts are taken from the complaint and the materials submitted by the parties. Unless otherwise noted, the facts set forth below are uncontroverted.[3]

A.  *Standby Room: May 2009- May 2010*

Ms. Sheafe-Carter is employed by the USPS as a mail processing clerk at the Brooklyn Processing and Distribution Center.[4] Decl. of Seth D. Eichenholtz ("Eichenholtz Decl."), Ex. B, Sheafe-Carter Dep. 88:24-25 ("Dep."). On July 25, 2003, Sheafe-Carter

---

[3] On April 24, 2013, USPS filed a Rule 56.1(a)(3) statement of material facts and gave Sheafe-Carter notice that her opposition to the motion had to include statements "in the form of affidavits." A briefing schedule set on March 13, 2013 had made Sheafe-Carter's response due on July 5, 2013. I later granted her request for an extension of time to respond, setting the date for her opposition as July 12, 2013. On July 12, 2013, Sheafe-Carter sought an additional extension, which I granted, setting the response date as July 15, 2013. On July 17, 2013, she requested additional time to complete her motion. In light of the numerous requests for extensions throughout the case – including during discovery in front of Magistrate Judge Bloom – I issued the following order: "[Plaintiff's] opposition papers are now due by July 25, 2013. Oral argument remains scheduled for July 26, 2013 at 10:00 AM in Courtroom 6C South. Ms. Sheafe-Carter can present her opposition orally if she is unable to complete her written opposition by the date of argument." At oral argument, Sheafe-Carter submitted a memorandum of law in opposition to defendant's motion for summary judgment, an "addendum to plaintiffs [sic] statement in opposition to defendants [sic] motion for summary judgment," a Rule 56 Statement, and four-binders of exhibits.

[4] In 2006, Sheafe-Carter brought an action against the Postmaster General alleging discrimination on the basis of disability in violation of the Rehabilitation Act and on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"). The allegations were related to a different period of time than the allegations that give rise to the instant suit. I granted summary judgment for the Postmaster General on April 23, 2008. *Carter v. Potter*, No 06 Civ 3854, 2008 WL 1848639 (E.D.N.Y. April 28, 2008).

sustained work-related injuries to her back and shoulders, including a left shoulder sprain. Compl. ¶ 8; Answer ¶ 8; Dep. 91:21-24; Letter from Claims Examiner, Sept. 12, 2003, Pl. Ex. 2-B at 1126.  As a result of these injuries, she obtained a "disability certificate" enumerating restrictions and limitations on her employment, including, *inter alia*, a requirement that she refrain from reaching above her shoulder and that she be permitted to use a chair with back support.  Dep. at 106:19-23; 109:8-10; 119:2-4; *see also* Employee Status Report, March 2, 2004, Pl. Ex. 2-B at 849 (listing Sheafe-Carter's limitations as, *inter alia*, "no . . . reaching over head.").  Sheafe-Carter remained medically restricted from reaching above her shoulder from 2004 until May 2011, when her doctor lifted her shoulder restriction.  Decl. of Matthew Doxsey ("Doxsey Decl.") ¶ 25; *see* EEO Investigative Aff., Feb. 26, 2009, Pl. Ex. 6-A.

On January 29, 2009, Sheafe-Carter was assigned to a limited duty post in the Manual Unit, where she was responsible for casing letter-sized mail.[5]  As of August 2009, the physical requirements of this position were "sedentary position; chair with back support [and] repetitive motions of the wrist/elbow below the waist."  *See* Offer of Modified Assignment (Limited Duty), Jan. 29, 2009, Pl. Ex. 2-B (listing the physical requirements of the position). Sheafe-Carte performed her tasks while seated in a chair.  Dep. at 95:4-9; 104:20-25; 126-127; 128:15-18; 126:22.  Reaching above the shoulder was, as of May 2009, an essential function of the job.  Dep. 113:23-25; *id.* at 115: 8-9 ("the case is . . . tall, so how would you get the mail if you don't reach for it."); *id.* at 114:22-115:2 (indicating that the other employees would do the reaching work that Sheafe-Carter could not do).

Prior to May 2009, the USPS permitted limited duty employees to case mail only in cases that were on eye level.  *Id.* at 115:17-18  ("[the USPS] allow[ed] you to just work . . . [at] eye level, you would not be stretching").  However, beginning on May 9, 2009, the USPS

---

[5]     "Casing" mail means placing mail in slots within a seven-foot cabinet.

made a series of changes to the work duties of limited duty employees as part of a "tour compression" in light of the lower volume of mail within the USPS. *Id.* at 115:17-21; *id.* at 127:24-128:7.  As a result of that tour compression, Sheafe-Carter's previous position was no longer available.  Def. 56.1 Statement, ¶¶ 9, 13; Pl. Addendum 13 ("Plaintiff's previous assignment were [sic] no longer available").  Sheafe-Carter was presented with a new assignment as a mail caser on April 28, 2009, which she accepted and signed. "Doxsey Decl. ¶ 7; *Id.*, Ex. E, Offer of Modified Assignment (Limited Duty), April. 28, 2009.  However, the manager in charge of limited and light duty employees – Donald Buckner – informed Sheafe-Carter that, due to her medical restrictions, she was unable to work in the assigned position.  Instead, he assigned her to a standby room on May 10, 2009 along with twenty-five other employees while the USPS searched for medically appropriate work.  Compl. ¶ 8; Depo. 99:24-25.  Sheafe-Carter received her full salary and benefits during her year in the standby room.  *See* Def. 56.1 Statement ¶ 21.

In July 2009, the USPS implemented a program known as the National Reassessment Process ("NRP") to evaluate the assignments of staff with medical limitations. Def. 56.1 Statement ¶ 31.  USPS "conducted searches for suitable work for all standby employees, including plaintiff." *Id.* ¶ 32.  Sheafe-Carter asked for work, but the USPS could not "find clerk work for plaintiff that fit within her medical restrictions." *Id.*

B.     *No-Work Status: May 2010 – May 2011*

The USPS informed Sheafe-Carter that it "completed a search for necessary tasks meeting your medical restrictions . . . . [and] [b]ased on this search, we were unable to identify any available necessary tasks with in [sic] your medical restrictions." Employee Leave Letter, May 11, 2010, Doxsey Decl., Ex. G.  The USPS removed Sheafe-Carter from her standby assignment and "advised [her] of the different kinds of leave she could take and how she could

4

apply for workers compensation benefits." Def. 56.1 Statement ¶ 39. In May 2010, Sheafe-Carter took unpaid leave status and received continuation of pay ("COP") benefits. *Id.* ¶ 40.

Between May 11, 2010 and May 10, 2011, the USPS did not find medically suitable work for plaintiff within her medical restrictions. During this period, Sheafe-Carter remained medically restricted from lifting her arms above her shoulders.

C.  *Merit Systems Protection Board*

On February 2011, Sheafe-Carter filed a complaint with the Merit Systems Protection Board ("MSPB") challenging her May 11, 2010 placement on leave.[6] Dep. 72:22-25; Eichenholz Decl. ¶ 43. This matter was litigated and resolved pursuant to a stipulation of settlement dated October 5, 2011. Eichenholz Decl., Ex. G. By the terms of this settlement, the USPS paid Sheafe-Carter a lump sum for back pay and annual leave. In return she agreed to "withdraw any claims, if any, regarding her claim for backpay for the period between May 10, 2010 and May 11, 2011" from the present case. *Id.* ¶ 6. She did not waive her claim to compensatory damages for this time period. Def. 56.1 Statement ¶ 45.

D.  *Plaintiff Returns to Work*

In accordance with her settlement of the MSPB claim, Sheafe-Carter provided the USPS an updated medical report dated May 9, 2011. This report indicated that plaintiff "could now perform intermittent reaching over her shoulder for up to six hours a day." Def. 56.1 Statement § 47. In May 2011, Sheafe-Carter's doctor modified her disability certificate to impose these lesser restrictions. In her deposition, Sheafe-Carter testified that she "asked [her doctor] to modify her work restriction on a trial basis" to permit her to reach over her shoulder because she "knew that if I could not reach over my shoulder, they wouldn't take me back" in

---

[6] The MSPB is an independent, quasi-judicial agency in the executive branch that serves as the guardian of federal merit systems. It was established by Reorganization Plan No. 2 of 1978, which was codified by the Civil Service Reform Act of 1978 (CSRA), Public Law No. 95-454.

the Manual Unit. Dep. 109:24-110:17; 113:11. Thereafter, the USPS offered her a new limited duty assignment. Sheafe-Carter accepted this assignment and returned to work in the Manual Unit on May 11, 2011. 56.1 Statement ¶ 49.[7]

D.  *EEO Complaints*

Sheafe-Carter filed an EEO complaint on August 29, 2009 alleging that her work assignment on tour compression was a violation of a prior settlement with the defendant and that the USPS had failed to provide a reasonable accommodation by giving her a new modified duty assignment in May 2009. Eichenholtz Decl. ¶ 27, Ex. C, D. On February 18, 2011, the EEO office determined that the evidence did not support a finding that Sheafe-Carter was subject to discrimination and issued a right to sue letter. *Id.*, Ex. E.

E.  *Procedural History*

On August 14, 2011, Sheafe-Carter filed the instant complaint. On April 24, 2013 the USPS filed a motion for summary judgment. See Def. Mot. Summ. J., ECF No. 30. I heard oral argument on the motion on July 26, 2013. Sheafe-Carter represented herself *pro se*.

DISCUSSION

A.  *Summary Judgment Standard*

Summary judgment should not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising

---

[7] Plaintiff testified that she suffered a job-related injury on February 23, 2012, and, as a result, is now totally incapacitated. Dep. 73:21-74:18. This injury and any claims related to it are outside the scope of the present litigation. She also testified that she plans to seek disability retirement.

6

an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (citations and quotation marks omitted). A fact is "material" if its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Once a moving party has demonstrated the absence of any genuine issue of material fact, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *See Koch v. Town of Brattleboro*, *VT.*, 287 F.3d 162, 165 (2d Cir. 2002) (citing Fed. R. Civ. P. 56(c)). Although discrimination cases are often very fact intensive, the Second Circuit has gone "out of [its] way to remind district courts that the impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (internal quotation marks omitted). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

Where a party is *pro se*, the court reads that party's papers liberally and interprets them to raise the strongest arguments they suggest. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). Even a *pro se* plaintiff, however, cannot withstand a motion for summary judgment by relying merely on the allegations of the complaint. "Rather, when confronted with evidence of facts that would support judgment in the defendant's favor as a matter of law, the plaintiff must come forward with evidence in admissible form that is capable of refuting those facts."

*Saldana v. Local 32B–32J Serv. Empl'r Int'l Union*, No. 03 Civ 1853(DF), 2005 WL 66895, at *2 (S.D.N.Y. Jan. 12, 2005). The non-moving party "cannot defeat the motion by relying on . . . conclusory statements," *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citation omitted).

B.  *The Reasonable Accommodation Claims*

Sheafe-Carter argues that the USPS discriminated against her on the basis of her disability when it placed her in a standby room from May 9, 2009 through May 11, 2010, and failed to locate medically appropriate work for her from May 2010 until May 2011. She bases her claims on the failure to make a reasonable accommodation. *See Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003) (indicating that a qualified individual can base a discrimination claim on any of "three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation.").

1.  *Governing Law*

The Rehabilitation Act prohibits disability-based discrimination on the part of government agencies and other recipients of federal funds. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794(a). The regulations promulgated pursuant to the Rehabilitation Act define a "qualified handicapped person" with respect to employment as a "handicapped person who, with reasonable accommodation, can perform the essential functions of the job in question." 45 C.F.R. § 84.3(l)(1).

When evaluating discrimination claims under the Rehabilitation Act, courts in this district follow the burden-shifting framework established by the Supreme Court in *McDonnell–Douglas Corp. v. Green*, 411 U.S. 792 (1973). That framework requires a plaintiff to establish a *prima facie* case of discrimination, after which the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action in question. The burden then shifts back onto the plaintiff to show that the employer's proffered reason is pretextual. *Ferraro v. Kellwood Co.*, 440 F.3d 96, 99-100 (2d Cir. 2006). A *prima facie* case of disability discrimination requires a plaintiff to show that (1) she is a handicapped person as defined by the Act; (2) she is otherwise qualified for the position or service being sought, *i.e.* with a reasonable accommodation, she could perform the essential functions; (3) she was excluded from the position or service solely by reason of her handicap; and (4) the position or service exists as part of a program or activity receiving federal financial assistance. *Id.*

    2.    *Analysis*

The USPS seeks summary judgment on the ground that Sheafe-Carter cannot demonstrate that she is otherwise qualified for the position sought and, therefore, fails to set forth a *prima facie* case of disability discrimination. For the reasons that follow, I agree.

An employee is "otherwise qualified" if she "is able to perform the essential functions of that job, either with or without a reasonable accommodation." *Shannon v. N.Y. City Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003) (internal quotation marks and citations omitted). "Essential functions" are duties that are "fundamental" to the job in question. *Stone v. City of Mount Vernon*, 118 F.3d 92, 97 (2d Cir. 1997). In determining which duties are fundamental, we accord "considerable deference to an employer's judgment." *D'Amico v. City of New York*, 132 F.3d 145, 151 (2d Cir. 1998) (internal quotation marks omitted). After determining the

9

essential functions of the job in question, the court then must "evaluate the medical evidence to determine whether the plaintiff can perform the job despite the handicap." *Gilbert v. Frank*, 949 F.2d 637, 641 (2d Cir. 1991). If the answer is no, "the next step in the 'otherwise-qualified' inquiry is for the court to evaluate, in light of these medical findings, whether the employer could reasonably accommodate the employee." *Id.* (internal quotation marks omitted). Reasonable accommodation may include adjustments such as the modification of physical facilities, work schedules, or equipment; however, it does not mean elimination of any of the job's essential functions. *Id.* at 642 (citation omitted); *see also Shannon v. N.Y. City Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003) ("A reasonable accommodation can never involve the elimination of an essential function of a job.").

Applying these principles to this case, I conclude that no reasonable juror could conclude that Sheafe-Carter was "otherwise qualified" to perform the position of mail caser. The undisputed facts demonstrate that lifting one's arms above the shoulders was an essential function of a mail caser during the relevant time period. Sheafe Carter admits that the mail cases were 7 feet high. *See* EEO Investigative Summary, Pl. Ex. 7 at 40. She testified that a mail caser is required to "reach all the way up as far as the arm can extend" in order to reach the last slot. *Id.* at 115:11-14.

The undisputed facts also indicate that Sheafe-Carter was unable to perform the essential tasks of the position. At all times relevant to the instant dispute, Sheafe-Carter was unable to lift her arms above her shoulders. *See* Pl. Letter to EEO, Sept. 20, 2009, Pl. Ex. 7 at 20. Sheafe-Carter testified at her deposition that, as a result of her impairments, she was unable to "put mail in high cases," *id.* at 172:16-22. Although she testified that she was "willing to exceed [her] medical restrictions" in order "to have [her] job," *id.* at 179:10-20, it is undisputed

10

that she was restricted from doing so by her doctors. *See also* EEO Investigative Aff., Feb. 26, 2009, Pl. Ex. 6-A (in response to the question "did your medical condition affect any of the essential functions of your position," Sheafe-Carter replied, "Yes. I could do no reaching . . . ").

Sheafe-Carter argues that the USPS was capable of reasonably accommodating her impairment by waiving the requirement that she be required to reach above her shoulder and permitting her to case mail at waist or eye level only. However, asking that an essential function of the position be waived is not a reasonable accommodation under the law. In fact, the Second Circuit has made it clear that "the suggestion that the [essential] requirements might be waived" or that "coworkers might perform [the reaching portion] of [the] job" is "not a suggestion for reasonable accommodation since these tasks were essential functions of the job." *Gilbert*, 949 F.2d at 644.

Sheafe-Carter also alleges that the USPS failed to reasonably accommodate her impairments by failing to find her a clerical or other medically appropriate position. However, she fails to meet her modest burden of production with respect to the reasonableness of the proposed accommodation. *See Borkowski v. Valley Cent. Sch. Dist.*, 138 (2d Cir. 1995). Sheafe-Carter merely asserts in conclusory fashion that USPS should have found her a job. Dep. at 202:2-5; *id*. at 204:4-10 ("All I know is they can make a job. That's what reasonable accommodation said . . . . They can bring me to work for eight hours, I can do something, take a paper, bring coffee to the boss, answer the phone."). She admits that did not ask the USPS to create a job for her, *see* Dep. at 204:17-21, and that she did not ask the USPS for office work at any point from 2009 to 2011. Dep. at 186:17-22. Sheafe-Carter presents no admissible evidence on which a reasonable juror could rely to conclude that alternative work within her medical restrictions was available. Her assertions that the USPS could have found something for

11

her to do are not sufficient to satisfy her modest burden of production with respect to the reasonableness of the proposed accommodation.

There is no dispute of fact that Sheafe-Carter was not otherwise qualified to perform the essential functions of the job of mail caser and the USPS did not fail to provide a reasonable accommodation during the challenged period. Accordingly, I grant summary judgment for the USPS on Sheafe-Carter disability discrimination claims.

C. *The Retaliation Claim*

Sheafe-Carter alleges that the decision to place her on leave in May 2010 was taken in retaliation for her August 2009 EEO complaint. The Rehabilitation Act provides a cause of action for retaliation against an employer who takes action against an employee for engaging in protected activity related to disability discrimination. 29 U.S.C. § 701 *et seq.* The *McDonnell Douglas* burden-shifting rules also apply to claims of retaliation pursuant to the Rehabilitation Act. *Regional Economic Community Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 54 (2d Cir. 2002).

1. *Prima facie case*

To establish a *prima facie* case of retaliation, Sheafe-Carter must show (1) that she engaged in protected activity; (2) the USPS knew she was engaged in the protected activity; (3) an adverse decision or course of action was taken against her; and (4) there was a causal connection between the protected activity and the adverse action. *See Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002). The defendant does not dispute that Sheafe-Carter meets the first three prongs of a *prima facie* case of retaliation. *See* Def. Mem. of Law 14, April 23, 2013, ECF No. 31.

Prong four requires the plaintiff to adduce evidence of a causal relationship between her protected activity and the alleged adverse employment action. Proof of causation can be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). Where, as here, a plaintiff relies on indirect evidence of causation, the temporal proximity between the protected activity and the alleged adverse activity must be "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001). "Claims of retaliation are routinely dismissed when as few as three months elapse between the protected . . . activity and the alleged act of retaliation." *Nicastro v. Runyon*, 60 F.Supp.2d 181, 185 (S.D.N.Y. 1999) (citing cases).

The defendant argues that Sheafe-Carter has failed to adduce evidence establishing a causal connection between her EEO complaints and her placement on leave in May 2010. I disagree. Although there is an 8-month gap between the filing of the EEO complaint in August 2009 and the alleged adverse employment action in May 2010, Sheafe-Carter engaged in actions to advance her EEO action during January, February, and March 2010. *See* Pl. 56.2 Statement at 14. Specifically, in February 2010, Sheafe-Carter collected statements from ten limited duty employees in the standby room and submitted them to the EEO in support of her claim. Construing the evidence in the light most favorable to Sheafe-Carter, she has established an indirect causal link between her protected activity and an adverse employment action. Thus, she has satisfied her burden of setting forth a *prima facie* case of retaliation.

    2. *Legitimate, Non-Retaliatory Reason*

13

Once a *prima facie* case of retaliation has been established, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the challenged employment decision. *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001). The USPS has met its burden of setting out a legitimate reason for its employment action. Specifically, the USPS proffers that Sheafe-Carter's placement on non-pay status was the result of the NRP policy to place employees on leave where there is no necessary, available work for them to do. Def. 56.1 Statement ¶ 38; Doxsey Decl.¶¶ 15 -16. In support, defendant has attached a copy of the NRP Guidelines. Doxsey Decl., Ex. F.

3. *Pretext*

The burden then shifts back to the plaintiff to point to "evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." *Cifra*, 252 F.3d at 216. In other words, the burden is on the plaintiff to adduce evidence from which a reasonable juror could conclude that the USPS's stated reason was a lie to disguise its retaliatory animus. Sheafe-Carter fails to meet this burden. Sheafe-Carter points to no statements attributable to the USPS that tend to show pretext and retaliatory motive connecting her EEO complaints to the decision to place her on no-pay status. Her disbelief of defendant's reasons is not sufficient to create a triable issue of fact. Nor is her disagreement with USPS's policy decisions. To withstand a motion for summary judgment, Sheafe-Carter must produce evidence from which a reasonable factfinder could infer that a discriminatory motive played a role in USPS's decision to place her on non-pay status and that defendant's asserted reasons were merely a pretext for discrimination. Even viewing the evidence in the light most favorable to Sheafe-Carter, I conclude that no reasonable jury could

14

infer such a motive. Since Sheafe-Carter has raised no genuine issues of material fact, *see* Fed. R. Civ. P. 56(c), it is appropriate to grant summary judgment for the defendant.

D.    *The Title VII Standard*

Sheafe-Carter's complaint alleges that the USPS discriminated against her on the ground that she is from Trinidad and Tobago. Although she appears to have dropped this claim, I address it briefly. To establish a *prima facie* case of national origin discrimination under Title VII, a plaintiff must show that (1) she is a member of the protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination. *McDonnell Douglas*, 411 U.S. at 80. A plaintiff must demonstrate that any adverse actions taken against her were taken in circumstances that support the inference that the actions were based on her protected status. *Alfano v. Costello*, 294 F.3d 365, 377-78 (2d Cir. 2002).

Sheafe-Carter's own testimony undermines her claim that any alleged adverse treatment she received was based on her national origin. At several times during her deposition, she remarked that the factor that determined how she was treated was her disability. She offers no evidence to suggest that her national origin was a basis for any alleged adverse employment actions. Therefore, summary judgment for defendant on this claim is warranted.

E.    *Conclusion*

For the foregoing reasons, defendant's motion for summary judgment on all claims is granted.

So ordered.

John Gleeson, U.S.D.J.

Dated: August 16, 2013
       Brooklyn, New York

15